# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| **JOSE MORALES, et al.,** | ) | |
| | ) | |
| Plaintiffs, | ) | 8:08CV88 |
| | ) | |
| and | ) | |
| | ) | |
| **GABRIEL SANCHEZ CLAUDIO, et al.,** | ) | |
| | ) | |
| Plaintiffs, | ) | 8:08CV161 |
| | ) | |
| vs. | ) | |
| | ) | |
| **GREATER OMAHA PACKING COMPANY, INC.,** | ) | REPORT AND RECOMMENDATION |
| | ) | |
| Defendant. | ) | |

This matter is before the court on the plaintiffs' Motion for Conditional Certification of a Collective Action Pursuant to the Fair Labor Standards Act (Filing No. 63 in case number 8:08CV88, and Filing No. 95 in case number 8:08CV161). The plaintiffs filed a brief (Filing No. 64 in case number 8:08CV88, and Filing No. 96 in case number 8:08CV161) and an index of evidence (Filing No. 65 in case number 8:08CV88, and Filing No. 97 in case number 8:08CV161) in support of the motion. The defendant filed a brief (Filing No. 70 in case number 8:08CV88, and Filing No. 102 in case number 8:08CV161) and an index of evidence (Filing No. 71 in case number 8:08CV88, and Filing No. 103 in case number 8:08CV161) in opposition to the motion. The plaintiff filed a brief (Filing No. 72 in case number 8:08CV88, and Filing No. 104 in case number 8:08CV161) and another index of evidence (Filing No. 73 in case number 8:08CV88, and Filing No. 105 in case number 8:08CV161)[1] in reply.

---

[1] All subsequent citations to the record will only be to the filings in case number 8:08CV88, unless specifically noted otherwise.

## INTRODUCTION

The plaintiffs in the above-captioned consolidated cases are the defendant's current and former employees who worked at some time during the period March 4, 2005, to the present. The cases were filed as class actions alleging violations of the Fair Labor Standards Act of 1938 (FLSA), 29 U.S.C. § 201, *et seq.*, and state law regarding pay for pre- and post-production line activities, including "donning and doffing," and other activities in connection with job functions. The plaintiffs seek relief for alleged violations of state and federal wage-and-hour laws, including for alleged failures to pay minimum wage and overtime compensation for uncompensated job-related activities. The plaintiffs filed the instant action on March 3, 2008. **See** Filing No. 1. Subsequent to consolidation with the later-filed action, the plaintiffs filed an amended complaint on July 7, 2008. **See** Filing No. 28. Although a motion for conditional class certification (Filing No. 11) had been filed in this matter shortly after the complaint, such motion was denied without prejudice subject to reassertion after consolidation. **See** Filing No. 23. On June 5, 2008, the cases were consolidated for all purposes. *Id.* On June 23, 2008, the court appointed lead counsel for the plaintiffs. **See** Filing No. 26. On December 10, 2008, the plaintiffs filed the instant motion for conditional class certification pursuant to the FLSA, 29 U.S.C. § 216(b). Thereafter, briefing on the instant motions was completed.

## FACTUAL BACKGROUND

The following facts are alleged in the plaintiffs' complaint. The defendant operates a meat processing facility at 3001 L Street in Omaha, Nebraska. **See** Filing No. 28 - Amended Complaint ¶ 21. The defendant relies on a compensation system known as "gang time" or "line time," which pays production employees only during the time period they are present on the actual production assembly line. *Id.* ¶ 34. Based on the gang time pay system, the defendant does not pay employees for all required pre-production line and post-production line activities and periods of required presence. *Id.* Specifically, the plaintiffs allege they are not compensated for the following activities, which are integral to their overall employment responsibilities:

> donning and doffing clothing and protective equipment, cleaning and sanitizing that equipment, sharpening knives, walking to their lockers and/or production line after already performing compensable activities, and at the end of the work day, walking to the wash stations and then to their lockers and/or supply rooms before the end of compensable time, working on knife maintenance equipment known as "steels" or "mousetraps", and waiting in line to receive required knives, supplies, tools and equipment needed for production line activities.

*Id.*

Additionally, the defendant's employees are required to wear uniforms and special personal protective equipment (PPE) for protection and sanitary reasons. *Id.* ¶ 35. The required uniforms include shirts, pants and boots. *Id.* The PPE may vary depending on job duties, but includes plastic aprons, belly guards, wrist guards, mesh sleeves, sheaths, gloves, mesh gloves, mesh aprons, hardhats, scabbards, hairnets, earplugs, coveralls, eye protection, and other similar items. *Id.* The defendant does not compensate the employees for the time spent removing, replacing or cleaning their PPE at the beginning or end of paid and/or unpaid meal or break periods. *Id.* ¶ 40. The plaintiffs believe there are at least 2000 present and former production and support employees in the proposed Class based on the time period between March 4, 2005, and the present. *Id.* ¶ 23; **See** Filing No. 64 - Brief p. 1 & n.1.

The defendant admits certain of the employees are required to wear varying types of PPE to perform the functions of their job. **See** Filing No. 67 - Answer ¶ 35. However, the defendant explains that the type and extent of equipment varies among employees based on their job assignment. **See** *id.* The defendant specifically describes different departments and assignments within departments, listing the types of uniforms or PPE used by the employees in each category. **See** Filing No. 70 - Brief p. 2-4. The defendant notes it currently employs approximately 720 hourly production workers, who work in each of four different departments: slaughter, fabrication, warehouse, and maintenance. **See** Filing No. 71 - Fili Decl. ¶ 4. Specifically, the defendant shows the approximately 80 warehouse and maintenance employees are not paid using the gang time system. *Id.* ¶¶ 5, 21, 22. Similarly, "[h]ourly employees in the slaughter cooler, fabrication cooler, foot

3

room, and cattle driver area are paid according to each individual employee's scheduled start time and end time as recorded by their supervisors." *Id.* ¶ 21. However, the defendant admits: "Most hourly employees in the slaughter and fabrication departments are compensated according to 'gang time' which measures, for each shift, the amount of time from when the first animal crosses the beginning of the production line to when the last animal crosses the beginning of the production line." *Id.* ¶ 16. Even so, the defendant shows that within the categories of employees paid under the gang time system, individuals employees may be credited with additional time based on performance of certain set-up or clean-up tasks, unrelated to the activities under dispute by the plaintiffs. *Id.* ¶ 17. Additionally, the gang time slaughter and fabrication departments' employees are paid "for an additional 12 minutes per day, beyond the gang time, as compensation for the time it takes to perform protective equipment donning, doffing, and related activities." *Id.* ¶ 18. The gang time fabrication employees also receive an additional two paid minutes during their 32 minute meal period. *Id.* ¶ 25. For these reasons, the defendant contends the plaintiffs cannot show the putative class members are similarly situated. **See** Filing No. 70 - Brief p. 2. Similarly, these differences, according to the defendant, allow for individualized defenses. *Id.* The defendant argues the plaintiffs provide no representation for warehouse or maintenance department employees and that the plaintiffs cannot show such employees are paid under the gang time system. *Id.* at 7. The plaintiffs do not dispute the class may be more narrowly defined to exclude those employees paid on a system other than the gang time system, specifically excluding warehouse and maintenance department employees. **See** Filing No. 72 - Reply p. 4, 9.

## ANALYSIS

The plaintiffs seek to conditionally certify their FLSA claim, pursuant to 29 U.S.C. § 216(b), to facilitate notification to all potential interested members of the pendency of the action and their ability to join as parties. Pursuant to the FLSA a collective action may be maintained "by any . . . employee [ ] for and in behalf of himself . . . and other employees similarly situated" to recover damages for the failure to pay minimum or overtime wages. 29 U.S.C. § 216(b); 29 U.S.C. § 207. An FLSA "collective action" is different from a Rule

4

23 class action.  "In a class action, a potential plaintiff's claim is automatically included in the case unless he expressly 'opts out' of the class.  By contrast, a potential plaintiff's claim will be included in a collective action *only* if he expressly opts *in* to the action." *Parker v. Rowland Express, Inc.*, 492 F. Supp. 2d 1159, 1163 (D. Minn. 2007) (emphasis in original).  The district court, in its discretion, may authorize the named plaintiffs to transmit notice of the lawsuit to other potential claimants upon a showing the named plaintiffs are similarly situated to the others whom they seek to represent. *Id.*  "[C]ourts generally follow a two-stage approach when deciding whether the named plaintiffs in an FLSA action are 'similarly situated' to other potential plaintiffs." *Id.*

> Succinctly put,
>> At the first stage, a class is conditionally certified on a relatively minimal showing, and then prospective plaintiffs can opt in to the action by filing consent forms.  At the second stage, which almost always follows substantial discovery, plaintiffs must make a stronger showing to continue to proceed on a collective basis.  If plaintiffs cannot make this stronger showing at the second stage, the conditionally certified class is decertified. Typically the second stage is triggered when the defendant moves to decertify the conditionally certified class.

*Parler v. KFC Corp.*, 529 F. Supp. 2d 1009, 1011 (D. Minn. 2008) (internal citation omitted).

Furthermore, the first stage or "notice stage" may be based only on the pleadings and any affidavits in the record.  *Parker*, 492 F. Supp. 2d at 1164.  At this stage, "[t]he court does not make any credibility determinations or findings of fact with respect to contrary evidence presented by the parties at this initial stage." *Burch v. Qwest Commc'ns Int'l, Inc.*, 500 F. Supp. 2d 1181, 1186 (D. Minn. 2007) (citation omitted).  The plaintiffs have the burden of presenting evidence "establishing a colorable basis that the putative class members are the victims of a single decision, policy, or plan." *Id.*  "A colorable basis means that plaintiff must come forward with something more than the mere averments in its complaint in support of its claim." *Severtson v. Phillips Beverage Co.*, 141 F.R.D. 276, 278-79 (D. Minn. 1992) (language from Mag. J. order contained in District Court opinion affirming).  Ultimately, there must be meaningful identifiable facts or legal nexus binding the claims "so that hearing the cases together furthers the purposes of

section § 216, is fair to both parties, and does not result in an unmanageable trial." *Falcon v. Starbucks Corp.*, 580 F. Supp. 2d 528, 535 (S.D. Tex. 2008); **see** *England v. New Century Fin. Corp.*, 370 F. Supp. 2d 504, 507-08 (M.D. La. 2005). "Courts who have faced the question of whether movants established substantial allegations have considered factors such as whether potential plaintiffs were identified; whether affidavits of potential plaintiffs were submitted; and whether evidence of a widespread discriminatory plan was submitted." *H & R Block, Ltd. v. Housden*, 186 F.R.D. 399, 400 (E.D. Tex. 1999) (internal citations omitted).  Evidence most production employees are paid on a gang time basis provides ample evidence of a "single decision, policy or plan." *Bouaphakeo v. Tyson Foods, Inc.*, 564 F. Supp. 2d 870, 896 (N.D. Iowa 2008); **see also** *Garcia v. Tyson Foods, Inc.*, No. 06-2198, 2009 WL 352603 (D. Kan. Feb. 12, 2009) (holding defendant's admissions with regard to gang time system, and failure to record actual time spent on activities, provided support for plaintiffs' assertions that employees were not compensated for time spent performing work activities).  Additional factors suggesting similarity include whether a significant number of the plaintiffs are from the same geographical location or facility.  **See** *Bouaphakeo*, 564 F. Supp. 2d at 894.  After conditional certification, discovery could continue as a collective action. *Parker*, 492 F. Supp. 2d at 1164.

In contrast, a second stage or final determination is usually made "after discovery is largely complete and the matter is ready for trial" when the court is able to make "a factual determination on the similarly situated question." *Id.* (citation omitted). "During this second stage analysis, a court reviews several factors, including (1) disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to defendant which appear to be individual to each plaintiff; [and] (3) fairness and procedural considerations." *Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1102-03 (10th Cir. 2001) (internal quotations and citation omitted); **see also** *Bouaphakeo*, 564 F. Supp. 2d at 897-900.

In the instant case, there is no dispute the conditional certification process is at the "notice stage" and based on a more lenient standard.  Discovery is ongoing.  The case has been tentatively set for trial in March 2010, but the court will hold a telephone conference with counsel for the parties on August 3, 2009, to determine discovery-related deadlines

and other scheduling matters.  **See** Filing No. 62.  The plaintiffs propose a collective action consisting of:

> All present and former production and support employees who have been employed by Greater Omaha Packing Co., Inc.'s Omaha, Nebraska processing facility during the time period March 4, 2005 to the present.

**See** Filing No. 63 - Motion p. 1.  The plaintiffs note the class may be further narrowed by including only those slaughter and fabrication department employees who are paid on the gang time system.  **See** Filing No. 72 - Reply p. 4-5, 9.  The plaintiffs seek to facilitate class notice by having this court

(1)   require the defendant to produce each class member's name, address and social security number;
(2)   approve a Notice form;
(3)   permit the plaintiffs to send the Notice form to each potential class member; and
(4)   order the defendant to circulate the Notice form to each potential class member who cannot be reached by mail.

**See** Filing No. 63 - Motion p. 1.

The plaintiffs contend the named plaintiffs are similarly situated to all potential class members because they are all subject to the defendant's common policy of requiring employees to perform work without compensation based on the gang time system rather than on the time spent by the employees engaged in compensable work.  **See** Filing No. 72 - Reply p. 2-5.  Specifically, the subject employees are required to engage in, at least some of, the following uncompensated activity:  donning, doffing and cleaning their PPE, and for walking time and waiting time associated with these tasks.  **See** Filing No. 64 - Brief p. 8; Filing No. 28 - Amended Complaint ¶ 34.  The plaintiffs argue that although the defendant disputes whether the practice is a violation of the FLSA, the system is uniform among production workers at the facility.  **See** Filing No. 72 - Reply p. 1-2.

The defendant argues there is evidence that not all employees are required to wear PPE nor are all employees paid on the gang time system.  **See** Filing No. 70 - Brief p. 9-

12.[2]  Further, the defendant states some employees, although paid under the gang time system, are also paid for extra time to complete certain activities, unrelated to the activities placed at issue by the plaintiffs.  *Id.* p. 10-11.  Additionally, the defendant contends time spent donning or doffing non-unique gear in not compensable under the FLSA.  *Id.* p. 11-12.  The defendant also contests the use of the plaintiffs' proposed notice form.  *Id.* p. 13-15.  Thus, the defendant disputes conditional class certification.  However, the defendant suggests that if certification is allowed, the class be limited to employees paid under the gang time system.

Without making any credibility determinations, the court finds the plaintiffs have met their burden of presenting evidence establishing a colorable basis that the putative class members are the victims of a single decision, policy, or plan.  Here, based on the defendant's admissions, the pleadings and the evidence before the court, there is little doubt a common policy or practice exists with regard to pay.  The gang time system facilitates the practice.  The policy or practice in issue may require the employees to perform uncompensated activities related to donning and doffing PPE.  There are meaningful identifiable facts and a legal nexus binding the claims of the proposed collective action members.  The differences among employees (i.e., types of equipment, amount of time spent) do not diminish this predominant relevant similarity.  Likewise, the defenses noted by the defendant would apply to many of the plaintiffs.  However, whether certain activities are compensable will not be determined at this stage of the litigation.  There are several plaintiffs already willing to proceed against the defendant and additional collective action members seek to join the matter.  At this time, it appears that hearing the class members' cases together furthers the purposes of section § 216, is fair to the parties, and will not result in an unmanageable trial.  Under the circumstances presented, the plaintiffs are adequate representatives of the defendant's past and current employees who engage in allegedly compensable, but uncompensated work activity.  The plaintiffs are similarly situated to members of the proposed class.  Thus conditional class certification

---

[2] The defendant also contends the plaintiff-declarations filed by the plaintiffs in support of the motion for conditional class certification are improper, inadequate, and inadmissible.  **See** Filing No. 70 - Brief p. 7-8.  The court need not reach these issues because the record supports the court's opinion without reliance on the disputed declarations.

8

is warranted with regard to those employees who use PPE and are paid under the gang time system. The plaintiffs have failed to meet their burden with regard to warehouse and maintenance department employees, or hourly employees in the slaughter cooler, fabrication cooler, foot room, and cattle driver area. The evidence does not support a finding that these employees, who are not compensated under the gang time system, are similarly situated to the plaintiffs.

For these reasons, the court recommends granting the plaintiffs leave to proceed with class notice, with the exceptions noted above. The defendant objected to the proposed notice filed by the plaintiffs. Additionally, the proposed form does not take into consideration the specific ruling of this court. Accordingly, the plaintiffs' motion should be granted, but additional time should be allowed for the parties to propose a joint notice form. Upon consideration,

**IT IS RECOMMENDED TO CHIEF JUDGE JOSEPH F. BATAILLON that:**

1. The plaintiffs' Motion for Conditional Certification of a Collective Action Pursuant to the Fair Labor Standards Act ([Filing No. 63](#) in case number 8:08CV88, and [Filing No. 95](#) in case number 8:08CV161) be granted to include:

> All present and former production and support employees who have been employed by Greater Omaha Packing Co., Inc.'s Omaha, Nebraska, processing facility during the time period March 4, 2005, to the present, who use personal protective equipment, and are compensated based on a gang time system.

2. The defendant be required to produce each class member's name, address and social security number within ten calendar days of entry of an order on this matter.

3. The parties have ten calendar days of entry of an order on this matter to confer regarding a proposed Notice form, and seek court approval therefore.

4. The plaintiffs be permitted to send the approved Notice form to each potential class member and the defendant be required to circulate the approved Notice form to each potential class member who cannot be reached by mail.

**ADMONITION**

Pursuant to NECivR 72.3 any objection to this Report and Recommendation shall be filed with the Clerk of the Court within ten (10) business days after being served with a copy of this Report and Recommendation. Failure to timely object may constitute a waiver of any objection. The brief in support of any objection shall be filed at the time of filing such objection. Failure to file a brief in support of any objection may be deemed an abandonment of the objection.

DATED this 13th day of April, 2009.

BY THE COURT:

s/Thomas D. Thalken
United States Magistrate Judge