**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA**

| | | |
|---|---|---|
| **JOSE MORALES,** *et al.*, | ) | |
| | ) | **8:08CV88** |
| **Plaintiffs,** | ) | |
| | ) | |
| **and** | ) | |
| | ) | |
| **GABRIEL SANCHEZ CLAUDIO,** *et al.*, | ) | **8:08CV161** |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **AGREED PROTECTIVE ORDER** |
| | ) | **REGARDING INSPECTION OF** |
| **GREATER OMAHA PACKING, CO., INC.** | ) | **DEFENDANT'S OMAHA FACILITY** |
| | ) | **BY PLAINTIFFS' EXPERT WITNESS** |
| **Defendant.** | ) | |

The parties hereby jointly stipulate and request that the Court enter this Protective Order (Protective Order) pursuant to Fed. R. Civ. P. 26(c), regarding the inspection by Plaintiffs' expert witness of Defendant's facility in Omaha, Nebraska.  As agreed by the parties, the inspection shall be subject to the following limitations and obligations:

1.      Plaintiffs have requested an inspection by their expert witness of the Omaha facility during a consecutive two day period:  June 30 to July 1, 2009.  The inspection shall not exceed a total of 15 hours of videotape during this period.  Only plaintiffs' experts, Bill Cutler and Oran Clemons, each with one video camera, and one attorney representing plaintiffs, Brian McCafferty, (hereinafter referred to as "Plaintiffs' Inspection Team") shall be allowed access to the facility.  The video camera shall be a hand-held model without a tripod, external electrical power lines, or artificial lights.  Such inspection shall be made during the facility's normal hours of operation.  Neither plaintiffs' counsel nor defendant's counsel shall provide any advance notice of the date and time chosen for inspection to the named plaintiffs or any other of defendant's employees, with the exception of President Henry Davis, Executive President Angelo Fili, Vice President Technical & Human Resources Kathleen Krantz, Plant Manager Jose Correa, Slaughter Superintendent Bob Walker, and Fabrication Superintendent Eliseo Garcia; all of whom need to be notified in advance for purposes of making arrangements to accommodate the inspection. Defendant's counsel will instruct these individuals not to notify any other of defendant's employees of the inspection in advance. Plaintiffs' Inspection Team shall be accompanied by a representative of defendant at all times during the inspection and orientation tour, and during the inspection Plaintiffs' Inspection Team shall exercise their best efforts to follow the inspection schedule attached as **Exhibit A** hereto.

In addition to the actual inspection and preliminary to it, on June 29, 2009, at a mutually agreed upon time after production has ceased for the day, defendant shall allow plaintiffs' counsel (without the other members of Plaintiffs' Inspection Team and without video camera) to tour the plant for the purpose of becoming oriented to the layout and operations of the plant. Such preliminary access shall last no more than one hour. During the tour, Plaintiffs' counsel shall be accompanied by a representative of defendant at all times.

2.      The camera shall be permitted to videotape only the following activities of the named plaintiffs or other production employees at the plant selected for inspection:
   a.   donning and doffing protective clothing and equipment;
   b.   activities occurring during the meal period, including leaving and returning to the production line;
   c.   washing or rinsing of clothes, hands, and/or equipment;
   d    equipment retrieval and drop-off, including washing or other preparation of equipment;
   e.   activities before and after what is commonly referred to as "line time" or "gang time," including walking;
   f.   removing clothing from and restoring clothing to employee lockers; and
   g.   gang time activities (plaintiffs requested, and defendant agreed, that the videotaping may include up to one hour of processing line activities).

3.      Plaintiffs' Inspection Team shall wear any protective and sanitary clothing and equipment that defendant directs, and they shall comply with any and all safety and sanitary policies or practices of the plant, as directed by defendant's representative who will accompany plaintiffs' team as indicated below.

4.      Plaintiffs' Inspection Team's inspection, observation, and videotaping will not be conducted in any manner that will impede or interfere with the operations and activities of defendant or the privacy and/or activities of defendant's employees (other than those activities specifically listed in this Order). Only one area of the facility will be designated for inspection at anyone time. During the inspection, Plaintiffs' Inspection Team may not divide up and visit different areas of the facility at different times. Plaintiffs' Inspection Team shall not question or communicate with any of defendant's employees or the representative that accompanies plaintiffs' team. All questions must be directed solely to defendant's counsel, who may elect to accompany Plaintiffs' Inspection Team during the inspection.

5.      Plaintiffs' Inspection Team shall inspect and videotape only those portions of the facility that are relevant to this lawsuit. Such areas include the laundry, knife, or supply rooms; the entrance/exit ways to the slaughter and fabrication areas of the facility; and cafeteria/break rooms. Plaintiffs' Inspection Team shall also be allowed to inspect or videotape the areas of the plant where workers are actually engaged in the beef production process insofar as such is relevant to establishing the equipment and clothing actually worn

by employees during processing work and to show the operation of the "gang time" system. Inspections and videotaping shall not take place in the management areas of the plant, nor shall Plaintiffs' Inspection Team videotape any USDA inspectors or activities of USDA inspectors that may be present.

6.      Within twenty days of the completion of the inspection, plaintiffs' counsel shall provide defendant, at defendant's expense, with an unedited copy of all videotapes obtained from the onsite inspection.  Plaintiffs' counsel shall maintain the original and all copies of the videotapes (other than the copy provided to defendant) and shall not distribute, dispense, provide, display, or allow dissemination of the videotapes or copies to any other person, party, or entity (other than the expert for plaintiffs, the expert's assistants, and counsel's support staff) as provided for in the parties' protective order approved by the Court on May 6, 2009.  All videotapes and information obtained from the onsite inspection shall be treated as "CONFIDENTIAL" pursuant to the terms of the parties' May 6, 2009 protective order.  Notwithstanding any provision above, this Protective Order does not restrict defendant's right to disclose or reveal its own confidential or proprietary information to whomever it chooses.

7.      Each member of Plaintiffs' Inspection Team (and any other assistants or staff who may be assigned to work on or with respect to the videotapes) shall execute a certification that they are aware of this Protective Order and its provisions, that they are aware of its prohibition against the use and disclosure of the videotapes and information gathered during these inspections for any purpose unrelated to the preparation and litigation of this case, that the provisions of the Protective Order shall continue in force and effect even after the conclusion and termination of this litigation, and that they submit themselves to the jurisdiction of the court for purposes of enforcement of the Protective Order.  These certifications, in the form attached as Exhibit B, will be filed with the court following the inspection. Within twenty days after the conclusion of this action, plaintiffs' counsel shall assemble and return to defendant's counsel all originals and copies of the videotapes gathered during the inspection.

8.      Each member of Plaintiffs' Inspection Team agrees to release and hold harmless defendant from any and all loss, damage or injury to their property or person, including death, caused by or resulting from, or alleged to have been caused by or resulted from, the condition of defendant's premises, including any machinery and equipment thereon, and/or the actions or failure to act of defendant's agents or employees; and this release shall be effective whether or not such loss, damage or injury is caused or alleged to have been caused by the negligence of defendant, its agents or employees.

9.      The terms, conditions, and provisions of this Protective Order shall continue in force and effect even after the conclusion and termination of this case, and specifically, the court retains jurisdiction to enforce the Protective Order notwithstanding the termination or dismissal of this action.

      10.    Either party may seek modification of this Protective Order by written motion served on the opposing side. The Protective Order shall remain in full fore and effect, however, until otherwise provided by further order of the court.

      11.    All of the terms contained in this Protective Order were jointly agreed to by both parties.

Stipulated and agreed to,

| | |
|---|---|
| s/ Brian P. McCafferty | s/ Erika Dillon |
| Counsel for Plaintiffs | Counsel for Defendant |
| | |
| Brian P. McCafferty | Joseph E. Tilson |
| Kenney Egan McCafferty & Young | Erika Dillon |
| 3031C Walton Road, Suite 302 | Jacob M. Rubenstein |
| Plymouth Meeting, PA 19462 | Meckler Bulger Tilson Marick & Pearson LLP |
| | 123 North Wacker Drive, Suite 1800 |
| | Chicago, Illinois  60606 |
| | Tel: (312) 474-7900 |
| | Fax: (312) 474-7898 |
| | joe.tilson@mbtlaw.com |
| | erika.dillon@mbtlaw.com |
| | jake.rubenstein@mbtlaw.com |

s/ Roger J. Miller
Counsel for Defendant

Roger J. Miller
McGrath North Mullin & Kratz, PC LLO
First National Tower, Suite 3700
1601 Dodge Street
Omaha, NE  68102
Tel: (402) 633-1462
Fax: (402) 341-0216
rmiller@mcgrathnorth.com

     SO ORDERED this 26th day of June, 2009,

                      BY THE COURT:

                      s/Thomas D. Thalken
                      United States Magistrate Judge

**Exhibit A**

<u>INSPECTION SCHEDULE</u>

| **FIRST INSPECTION DAY – JUNE 30, 2009** | |
| --- | --- |
| <u>**Location for Inspection**</u> | <u>**Inspection Time**</u> |
| Fabrication shift start (fabrication floor entrance) | 5:15 a.m - 6:00 a.m. |
| Slaughter shift start (slaughter floor entrance) | 5:45 a.m. – 6:30 a.m. |
| Slaughter break | 9:00 a.m. – 9:15 a.m. |
| Fabrication break | 9:13 a.m. – 9:30 a.m. |
| Slaughter lunch | 11:30 a.m. – 12:00 p.m. |
| Fabrication lunch | 12:28 p.m. – 1:00 p.m. |
| Fabrication break, only if shift runs past 3:00 p.m. | 2:58 p.m. – 3:10 p.m. |
| Slaughter break, only if shift runs past 3:15 p.m. | 3:00 p.m. – 3:10 p.m. |
| Fabrication shift end | TBD |
| Slaughter shift end | TBD |
| Fabrication and slaughter male locker rooms | TBD |

| SECOND INSPECTION DAY – JULY 1, 2009 | |
|---|---|
| **Location for Inspection** | **Inspection Time** |
| Fabrication shift start (fabrication floor entrance) | 5:15 a.m. - 6:00 a.m. |
| Slaughter shift start (slaughter floor entrance) | 5:45 a.m. – 6:30 a.m. |
| Slaughter break | 9:00 a.m. – 9:15 a.m. |
| Fabrication break | 9:13 a.m. – 9:30 a.m. |
| Slaughter lunch | 11:30 a.m. – 12:00 p.m. |
| Fabrication lunch | 12:28 p.m. – 1:00 p.m. |
| Fabrication break, only if shift runs past 3:00 p.m. | 2:58 p.m. – 3:10 p.m. |
| Slaughter break, only if shift runs past 3:15 p.m. | 3:00 p.m. – 3:10 p.m. |
| Fabrication shift end | TBD |
| Slaughter shift end | TBD |
| Fabrication and slaughter male locker rooms | TBD |

**Exhibit B**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| JOSE MORALES, *et al*., | ) Case No: 8:08-cv-0088 |
| | ) |
| Plaintiffs, | ) |
| | ) |
| and | ) |
| | ) Case No: 8:08-cv-0161 |
| GABRIEL SANCHEZ CLAUDIO, *et al*., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) **CERTIFICATE OF COMPLIANCE WITH** |
| v. | ) **PROTECTIVE ORDER REGARDING** |
| | ) **INSPECTION OF DEFENDANT'S OMAHA** |
| GREATER OMAHA PACKING, CO., INC. | ) **FACILITY BY PLAINTIFFS' EXPERT** |
| | ) **WITNESS** |
| Defendant. | ) |

       By signing this document, the undersigned certifies that s/he has read, understand, and agree to the Protective Order regarding the inspection by Plaintiffs' expert witnesses, Bill Cutler and Oran Clemons, of Defendant's facility in Omaha, Nebraska, and the May 6, 2009 Protective Order regarding confidential information.
       Dated this _____ day of June, 2009.


_____       _____
     (print full name)                       (signed)


_____       _____
     (print full name)                       (signed)


_____       _____
     (print full name)                       (signed)