**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA**

| | | |
|---|---|---|
| JOSE MORALES, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | 8:08CV88 |
| | ) | |
| and | ) | |
| | ) | |
| GABRIEL SANCHEZ CLAUDIO, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | 8:08CV161 |
| | ) | |
| vs. | ) | |
| | ) | |
| GREATER OMAHA PACKING COMPANY, INC., | ) | FINDINGS AND RECOMMENDATIONS |
| | ) | |
| Defendant. | ) | |

This matter is before the court on the plaintiffs' Motion for Class Certification (Filing No. 119).[1]  The plaintiffs filed a brief (Filing No. 120) and an index of evidence (Filing No. 121) in support of the motion.  The defendant filed a brief (Filing No. 128) and an index of evidence (Filing No. 129) in opposition to class certification.  The plaintiffs filed a brief (Filing No. 132) in reply.

**INTRODUCTION**

The plaintiffs in the above-captioned consolidated cases are the defendant's current and former employees who worked at some time during the period March 4, 2005, to the present.  The cases were filed as class actions alleging violations of the Fair Labor Standards Act of 1938 (FLSA), 29 U.S.C. § 201, *et seq.*, and state law regarding pay for pre- and post-production line activities, including "donning and doffing," and other activities in connection with job functions. The plaintiffs seek relief for alleged violations of state and federal wage-and-hour laws, including for alleged failures to pay minimum wage and overtime compensation for uncompensated job-related activities.  The plaintiffs filed the

---

[1] All citations to the record will only be to the filings in case number 8:08CV88, unless specifically noted otherwise.

instant action on March 3, 2008.  **See** Filing No. 1.  On June 5, 2008, the cases were consolidated for all purposes.  **See** Filing No. 23.  Subsequent to consolidation with the later-filed action, the plaintiffs filed an amended complaint on July 7, 2008.  **See** Filing No. 28.  On June 23, 2008, the court appointed lead counsel for the plaintiffs.  **See** Filing No. 26.

On December 10, 2008, the plaintiffs filed a motion for conditional class certification pursuant to the FLSA, 29 U.S.C. § 216(b).  On June 9, 2009, the court conditionally certified the plaintiffs' action as a collective action pursuant to the FLSA.  **See** Filing No. 92.  On June 29, 2009, the court approved the parties' notice form to be sent to potential FLSA members.  **See** Filing No. 106.  On September 1, 2009, the plaintiffs filed the instant motion for class certification of their state law claims pursuant to Fed. R. Civ. P. 23.  **See** Filing No. 119.

On April 6, 2009, the defendant filed a motion to dismiss nine named plaintiffs based on their failure to engage in certain discovery.  **See** Filing No. 74.  On July 6, 2009, the court denied the motion to dismiss.  **See** Filing No. 107.  The court determined the plaintiffs' conduct did not warrant the extreme sanction of dismissal.  *Id.* at 3.  The court's order was based, in part, on the plaintiffs' representation that two of the named plaintiffs intended to prosecute the matter and would respond to discovery.  *Id.* at 2.  Additionally, the plaintiffs asked for additional time to locate certain other plaintiffs.  *Id.*  Finally, the court noted the defendant's concerns may be moot in light of conditional certification and the planned opt-in procedure.  *Id.* at 3.  However, there is no evidence in the record that the plaintiffs have distributed the FLSA notice form or that any additional plaintiffs have opted-in to the conditionally certified class.

On July 28, 2009, the defendant filed a second motion to dismiss.  **See** Filing No. 108.[2]  On January 26, 2010, the court denied the motion.  **See** Filing No. 137.  The court required the parties to complete discovery and resolve any discovery disputes through the undersigned magistrate judge.  *Id.*

---

[2] Chief Judge Joseph F. Bataillon referred the motion to dismiss to the undersigned magistrate judge for findings and recommendations.  **See** Filing No. 133.

## FACTUAL BACKGROUND

The following facts are alleged in the plaintiffs' complaint. The defendant operates a meat processing facility at in Omaha, Nebraska. **See** Filing No. 28 - Amended Complaint ¶ 21. The defendant relies on a compensation system known as "gang time" or "line time," which pays production employees only during the time period they are present on the actual production assembly line. *Id.* ¶ 34. Based on the gang time pay system, the defendant does not pay employees for all required pre-production line and post-production line activities and periods of required presence. *Id.* Specifically, the plaintiffs allege they are not compensated for the following activities, which are integral to their overall employment responsibilities:

> donning and doffing clothing and protective equipment, cleaning and sanitizing that equipment, sharpening knives, walking to their lockers and/or production line after already performing compensable activities, and at the end of the work day, walking to the wash stations and then to their lockers and/or supply rooms before the end of compensable time, working on knife maintenance equipment known as "steels" or "mousetraps", and waiting in line to receive required knives, supplies, tools and equipment needed for production line activities.

*Id.*

Additionally, the defendant's employees are required to wear special personal protective equipment (PPE) for protection and sanitary reasons. *Id.* ¶ 35. The PPE may vary depending on job duties, but includes plastic aprons, belly guards, wrist guards, mesh sleeves, sheaths, gloves, mesh gloves, mesh aprons, hard hats, scabbards, hairnets, earplugs, coveralls, eye protection, and other similar items. *Id.* The defendant does not compensate the employees for the time spent removing, replacing or cleaning their PPE at the beginning or end of paid and/or unpaid meal or break periods. *Id.* ¶ 40. The plaintiffs believe there are approximately 2000 putative class members. *Id.* ¶ 23; **see** Filing No. 132 - Reply p. 4.

The defendant admits certain employees are required to wear varying types of PPE to perform the functions of their job. **See** Filing No. 67 - Answer ¶ 35. However, the defendant explains that the type and extent of equipment varies among employees based

on their job assignment. **See** *id.* The defendant describes the two departments at issue, slaughter and fabrication, as having 230 job categories and approximately 640 current employees between them. **See** Filing No. 128 - Brief p. 4-8, 13-14. Further, the defendant generally lists the types of PPE used by the employees in different job categories. *Id.* The defendant contends donning and doffing of certain types of PPE is not compensable, but that it makes a practice of paying gang time employees for an additional 12 minutes per shift for compensable pre- and post-shift activities. *Id.* at 8, 22-23. The defendant states individual employees may be paid additional time if they perform pre- or post- shift activities assigned by a supervisor. *Id.* at 8. Generally, however, the defendant admits:

> Most hourly employees in the slaughter and fabrication departments are compensated according to "gang time." Gang time differs each day and differs by department. In the slaughter department, game time is measured from the time that the first animal is slaughtered to the time that the last animal is slaughtered; in the fabrication department, it is measured from the time that the fist carcass enters the department to the time when the last carcass enters the department.

*Id.* at 8.

## ANALYSIS

Rule 23 of the Federal Rules of Civil Procedure governs the requirements for establishing and maintaining certification for a class action lawsuit. "In order to obtain class certification, a plaintiff has the burden of showing that the class should be certified and that the requirements of Rule 23 are met." *Coleman v. Watt*, 40 F.3d 255, 258-59 (8th Cir. 1994) (**citing** *Smith v. Merch. & Farmers Bank of W. Helena*, 574 F.2d 982, 983 (8th Cir. 1978)).

Rule 23(a) provides:

> One or more members of a class may sue or be sued as representative parties on behalf of all members only if:
> (1)   the class is so numerous that joinder of all members is impracticable;
> (2)   there are questions of law or fact common to the class;
> (3)   the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

>   (4)   the representative parties will fairly and adequately protect the interests of the class.

**See** Fed. R. Civ. P. 23(a). The United States Supreme Court has summarized the four basic requirements as these: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613 (1997). The determination under Rule 23(a) is not perfunctory, "the court must conduct a 'rigorous analysis' to ensure that the prerequisites of Rule 23 are satisfied." *Elizabeth v. Montenez*, 458 F.3d 779, 784 (8th Cir. 2006) (**quoting** *Gen. Tel. Co. of the S.W. v. Falcon*, 457 U.S. 147, 161 (1982)). "While class stipulations by the parties may be helpful, they are not complete substitutes for 'rigorous analysis.'" *Hervey v. City of Little Rock*, 787 F.2d 1223, 1227 (8th Cir. 1986).

"Plaintiffs must meet all requirements of Rule 23(a) and fall within one of the categories of Rule 23(b) to certify their . . . claims as a class action." *Blades v. Monsanto Co.*, 400 F.3d 562, 568-69 (8th Cir. 2005) (**citing** *Amchem*, 521 U.S. at 614). Rule 23(b) allows a class action if (1) there is otherwise a risk of (a) inconsistent adjudications or (b) impairment of interests for non class members; (2) the defendant's conduct applies generally to the whole class; or (3) questions of law or fact common to members of the class predominate and the class action is a superior method for adjudication. **See** Fed. R. Civ. P. 23(b).

In addition to the Rule 23(a) and (b) requirements, pursuant to Rule 23(c)(1)(B): "An order certifying a class action must define the class and the class claims, issues, or defenses, and must appoint class counsel under Rule 23(g)." The plaintiffs' propose a class action, pursuant to Fed. R. Civ. P. 23, defined consistently with the FLSA collective action previously conditionally certified in this case. **See** Filing No. 119 - Motion; Filing No. 92 - Order; Filing No. 132 - Reply p. 2. The proposed class consists of

>   All current and former production and support workers of Defendant Greater Omaha Packing Co.'s Omaha, Nebraska meat processing facility who have been employed by Greater Omaha at any time from March 4, 2004, to the present and are or were paid on a "gang time" basis during this Class Period.

**See** Filing No. 132 - Reply p. 2.

5

The plaintiffs contend the putative class members are all subject to the defendant's common policy of requiring employees to perform work without compensation. **See** *id.* at 3. Specifically, the subject employees are required to wear at least some PPE. *Id.* Additionally, the subject employees engage in, at least some of, the following uncompensated activity: don their PPE, clean themselves and PPE, and doff their PPE. **See** Filing No. 120 - Brief p. 4-5. The plaintiffs argue that although the defendant disputes whether the practice is a violation of Nebraska law, the system is uniform among production workers at the facility. Specifically, if the defendant pays certain groups of employees an additional 12 minutes per shift, which the plaintiffs dispute, such practice is uniform among the employees. **See** Filing No. 132 - Reply p. 3. The plaintiffs also contend that although the damages may be different between plaintiffs or difficult to calculate, such issue is not dispositive of the certification decision.

The defendant denies class certification is appropriate in this case. The defendant argues that although all of the putative class members may wear PPE, the type of PPE worn and whether or not such donning or doffing activity is compensable presents individual questions among class members. **See** Filing No. 128 - Brief p. 16-17. The defendant contends the employees wear a variety of PPE and the time taken to don, doff, and walk to various parts of the facility will differ for employees based on individual work habits and the location of work stations. *Id.* at 17. The defendant contends time spent donning or doffing non-unique gear is not compensable under the law. *Id.* at 18-19. Alternatively, the defendant states evidence shows some employees are compensated for the time spent donning and doffing PPE. **See** *id.* at 18. Specifically, the defendant provides evidence that the defendant adds twelve or fourteen minutes to each "gang time" shift for pre- and post- shift activities. *Id.*

The court will review, *seriatim*, each of the requirements the plaintiffs must satisfy with regard to class certification.

**1.    Rule 23(a) Requirements**

  **i.    Numerosity**

The first prerequisite the plaintiffs must meet under Rule 23(a) is numerosity. *Amchem*, 521 U.S. at 613. Rule 23(a) requires "the class be so numerous that joinder of all members is impracticable." **See** Fed. R. Civ. P. 23(a)(1). Rule 23(a) "requires only the impracticality, not the impossibility, of joinder." *United States Fid. & Guar. Co. v. Lord*, 585 F.2d 860, 870 (8th Cir. 1978). The plaintiffs need only show "that joining all members of the class would be difficult." *Caroline C. By and Through Carter v. Johnson*, 174 F.R.D. 452, 462 (D. Neb. 1996) (citations omitted) (stating "as few as 40 class members should raise a presumption that joinder is impracticable"). "The Eighth Circuit has not established strict requirements regarding the size of a proposed class[.]" *Estate of Mahoney v. R.J. Reynolds Tobacco Co.*, 204 F.R.D. 150, 153 (S.D. Iowa 2001) (**citing** *Emanuel v. Marsh*, 828 F.2d 438, 444 (8th Cir. 1987); *Boyd v. Ozark Air Lines, Inc.*, 568 F.2d 50, 54 (8th Cir. 1977)).

"Although mere allegations of numerosity are insufficient to meet this prerequisite, a plaintiff need not show the precise number of members in the class. . . . [Further,] where the numerosity question is a close one, a balance should be struck in favor of a finding of numerosity, since the court has the option to decertify pursuant to Rule 23(c)(1)." *Evans v. U.S. Pipe & Foundry Co.*, 696 F.2d 925, 930 (11th Cir. 1983). Typically, the court may rely on the pleadings, however "it may be necessary for the court to probe behind the pleadings to ensure that the prerequisites of Rule 23 have been met." *Chesher v. Neyer*, 215 F.R.D. 544, 546 (S.D. Ohio 2003) (**citing** *Gen. Tel. Co. of S.W.*, 457 U.S. at 160). A court "may consider reasonable inferences drawn from facts before [it] at the stage of the proceedings." *Senter v. General Motors Corp.*, 532 F.2d 511, 523 (6th Cir. 1976); **see** *Serfaty v. Int'l Automated Sys., Inc.*, 180 F.R.D. 418, 420 (D. Utah 1998).

In the instant case, there are potentially between 640 and 2,200 current and former employees from the Omaha, Nebraska processing facility. **See** Filing No. 132 - Reply p. 3-4; Filing No. 128 - Brief p. 1-2, 4-5. Each of these employees is a potential class member, particularly because the defendant admits to using the same pay system for the workers falling under the class definition. The defendant does not dispute numerosity.

After consideration of the number of persons in the proposed class, the nature of the action, the size of the individual claims, the inconvenience of trying individual suits, and other factors relevant to the practicality of joining all the putative class members, the court finds the plaintiffs satisfy the numerosity requirement. **See** *Paxton v. Union Nat'l Bank*, 688 F.2d 552, 559-60 (8th Cir. 1982). Based upon the evidence presented, the large number of putative class members justifies class treatment. It is evident a class of this size would promote judicial economy over individual suits, particularly under the circumstances of this case.

### ii.     Commonality

Second, the plaintiffs must prove the element of commonality. *Amchem*, 521 U.S. at 613. Rule 23(a)(2) requires there be "questions of law or fact common to the class." **See** Fed. R. Civ. P. 23(a)(2). "Rule 23 is satisfied when the legal question 'linking the class members is substantially related to the resolution of the litigation.'" *DeBoer v. Mellon Mortgage Co.*, 64 F.3d 1171, 1174 (8th Cir. 1995) (**quoting** *Paxton*, 688 F.2d at 561). However, "[t]he rule does not require that every question of law or fact be common to every member of the class." *Paxton*, 688 F.2d at 561. Further, commonality may be shown "where the question of law linking the class members is substantially related to the resolution of the litigation even though the individuals are not identically situated." *Id.* (citation omitted). One district court has stated "the commonality requirement imposes a very light burden on the Plaintiff seeking to certify a class and is easily satisfied." *In re Hartford Sales Practices Litig.*, 192 F.R.D. 592, 603 (D. Minn. 1999).

The plaintiffs argue there are common questions of law and fact because the case is based on whether the defendant failed to pay hourly employees for all work prior and subsequent to their shift. **See** Filing No. 120 - Brief p. 12-13. In contrast, the defendant argues there are wide factual variations among the employees due to their particular activities including types of PPE worn, equipment used, and work location. **See** Filing No. 128 - Brief p. 16-17. The defendant's argument with regard to the class definition is moot in light of the plaintiffs' proposed change in the definition as reflected above.

The court concludes the core of the plaintiffs' suit is based on the same law and common facts. Here, the defendant relies on a uniform labor practice for its slaughter and fabrication department employees. The practice results in the employees engaging in activities for which they may not be paid. While the exact amount of time for each employee may vary, the employees are performing nearly identical tasks under nearly identical conditions, despite the variety of job categories. Variation among employees due to the types of clothing worn, equipment used and work location does not diminish the nature of the general pay system. Based upon the evidence presented and the parties' pleadings, the undersigned magistrate judge finds the commonality requirement has been satisfied as to the class as a whole.

### iii.   Typicality

Third, the class representatives have the burden to show typicality of their claims in relation to the other putative members of the class. *Amchem*, 521 U.S. at 613. Rule 23(a) requires a named plaintiff to have claims or defenses which "are typical of the claims or defenses of the class." **See** Fed. R. Civ. P. 23(a)(3). The Eighth Circuit, "long ago defined typicality as requiring a demonstration that there are other members of the class who have the same or similar grievances as the plaintiff." *Chaffin v. Rheem Mfg. Co.*, 904 F.2d 1269, 1275 (8th Cir. 1990) (internal quotations and citations omitted). "[F]actual differences will not render a claim atypical if the claim arises from the same event or practice or course of conduct that gives rise to the claims of the class members, and if it is based on the same legal theory." *Beck v. Maximus, Inc.*, 457 F.3d 291, 296 (3d Cir. 2006) (citations omitted and alteration in original); **see** *Alpern v. UtiliCorp United, Inc.*, 84 F.3d 1525, 1540 (8th Cir. 1996). The burden to establish typicality is "fairly easily met so long as other class members have claims similar to the named plaintiff." *DeBoer*, 64 F.3d at 1174. However, the plaintiffs cannot show typicality where the question of liability can only be ascertained on an individualized inquiry for each class member. *Parke v. First Reliance Standard Life Ins. Co.*, 368 F.3d 999, 1004-05 (8th Cir. 2004) (denying class certification for denial of disability insurance benefits).

9

The plaintiffs contend the claims of the named plaintiffs are typical of the whole class and the named plaintiffs' allegations are not based on conduct unique to them but rather on a pay system which affects all class members.  See Filing No. 120 - Brief p. 14-15.  The defendant denies the plaintiffs can show typicality because the analysis will require an individualized fact-intensive inquiry.  See Filing No. 128 - Brief p. 18.  In addition, the defendant describes how the current plaintiffs have provided evidence of different amounts of time spent on uncompensated activities, yet the defendant pays twelve or fourteen minutes of additional time per shift.  *Id.*  In contrast, the plaintiffs dispute whether the defendant actually pays employees for the extra time.  See Filing No. 132 - Reply p. 3.  In any event, the plaintiffs contend, the standard additional pay of twelve or fourteen minutes is evidence that the defendant treats each of the gang time employees with a standard practice regardless of individual differences.  *Id.*

It is true  "[a] proposed class representative is not adequate or typical if it is subject to a unique defense that threatens to play a major role in the litigation ."  *In re Milk Prods. Antitrust Litig.*, 195 F.3d 430, 437 (8th Cir.1999) (citing cases).  By the same token, it is inappropriate to certify a class "where a putative class representative is subject to unique defenses which threaten to become the focus of the litigation." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992).  However, "differences in the claimed damages or the availability of certain defenses do not defeat typicality, as long as the class claims are generally based on the same legal or remedial theory." *Morris v. Wachovia Sec. Inc.*, 223 F.R.D. 284, 295 (E.D. Va. 2004).

After reviewing the arguments in light of all the evidence presented, the court finds the employees do not present unique arguments with regard to the types of activities that are allegedly unfairly uncompensated.  Whether the employees are engaging in compensable pre- and post-shift activities will not depend on how much time an individual employee takes to don an apron.  Instead the plaintiffs all rely on non-unique general allegations that particular categories of activities are compensable, yet the defendant fails to compensate for these activities.  At a basic level, the claims and arguments made by the named plaintiffs are typical of the proposed class members.  The plaintiffs do not rely on the time taken to perform the uncompensated activities by a single employee.  The critical

10

payment system governing which activities are compensated is not unique to a particular plaintiff or to the named plaintiffs. Most of the defendant's employees are paid based on a system which excludes payment for certain work activities. Accordingly, the plaintiffs have met their burden of showing their claims are typical of those of the putative class.

### iv. Adequacy of Representation

The fourth prerequisite a plaintiff must meet under Rule 23(a) for class certification is adequacy of representation. *Amchem*, 521 U.S. at 613. Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." **See** Fed. R. Civ. P. 23(a)(4). "The focus of Rule 23(a)(4) is whether: (1) the class representatives have common interests with the members of the class, and (2) whether the class representatives will vigorously prosecute the interests of the class through qualified counsel." *Paxton*, 688 F.2d at 562 (**citing** *Gonzales v. Cassidy*, 474 F.2d 67, 72 (6th Cir. 1973)).

The plaintiffs argue they and their counsel will adequately protect the interests of all proposed class members because the named plaintiffs have the same interests as all putative class members in recovering wages. **See** Filing No. 120 - Brief p. 15-16. The defendant does not dispute the adequacy of counsel based on counsel's experience, but does question the zeal of representation due to the plaintiffs failure to send out FLSA class notice. **See** Filing No. 128 - Brief p. 14-15. Otherwise, the defendant argues the class representatives have failed to prove they have common interests with other members of the class because some plaintiffs have failed to participate in discovery and the named plaintiffs have not worked in every one of the over 230 job categories at the facility. *Id.* at 10-14. The plaintiffs counter that the plaintiffs' interests remain the same as those of the class and the plaintiffs' conduct has not violated any court order regarding discovery or FLSA class notice. **See** Filing No. 132 - Reply p. 8-12. Further, the plaintiffs agreed to drop the uncooperative named plaintiffs and have continued to comply with discovery demands. *Id.* at 5. The plaintiffs argue the defendant failed to show any deficiency or indication the named plaintiffs interests are antagonistic to the putative class members. **See** Filing No. 120 - Brief p. 16.

The court has reviewed the evidence presented and finds the plaintiffs have common interests with the proposed members of the class under the definition of the claim used by the plaintiffs and sufficient interest in prosecuting the matter on behalf of the class. In fact, as the plaintiffs have defined their claims, the named plaintiffs have interests identical to the interests of the class. The plaintiffs' counsel also appears qualified. Thus, the undersigned magistrate judge finds the plaintiffs and their counsel will fairly and adequately protect the interests of the class, thus meeting the adequacy of representation element under Rule 23(a)(4).

### 2.     Rule 23(b)(1) Requirements

For class certification, the plaintiffs must also prove this action may be maintained under Rule 23(b)(1), (2), or (3). *Amchem*, 521 U.S. at 614. The plaintiffs have moved to do so under Rule 23(b)(1) and/or Rule 23(b)(3). Under Rule 23(b)(1), the court must find:

> prosecuting separate actions by or against individual class members would create a risk of:
> (A)   inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or
> (B)   adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests;

**See** Fed. R. Civ. P. 23(b)(1).

The plaintiffs argue the defendant's pay system impacts each class member similarly and raises the same questions of law. **See** Filing No. 120 - Brief p. 17-18. There is a risk that if each of the production employees were to litigate separately varying outcomes would result with regard to, for example, the types of activities which are compensable. *Id.* The defendant argues the individualized nature of the damage awards does not amount to an "incompatible standard of conduct" for the defendant. **See** Filing No. 128 - Brief p. 21.

The court finds the defendant's uniform pay system affects each employee in the same way, albeit to varying degrees. Further, a determination about whether the pay system is a violation of state statute should be uniform for each plaintiff and the defendant. **See** *Thomas v. SmithKline Beecham Corp.*, 201 F.R.D. 386, 396-97 (E.D. Pa. 2001) ("Certifications under [Rule 23(b)(1)] are common in labor relations cases because defendants often provide 'unitary treatment to all members of [a] putative class [in this] . . . area' and thus the rights of absent 'class member[s] [are often] . . . implicated by litigation brought by other class members.'") (alterations in original). The defendant may be subject to differing and incompatible standards of conduct if the outcomes of separate litigation resulted in different definitions of work or compensable activity, despite the plaintiffs' prayer for past wages. Under such circumstances, employees working side-by-side may have to be compensated differently for the same activity. Accordingly, class certification under Rule 23(b)(1) appears appropriate.

### 3. Rule 23(b)(3) Requirements

Under Rule 23(b)(3), the court must find "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." **See** Fed. R. Civ. P. 23(b)(3). "The requirements of 'predominance' and 'superiority' are stated in Rule 23(b)(3) in the conjunctive; both must be present for an action to be maintained under that provision." *Bryant v. Bonded Accounts Serv./Check Recovery*, 208 F.R.D. 251, 261 (D. Minn. 2000).

### 1. Predominance

As to the first prong of the inquiry, the Supreme Court has ruled the "predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623 (**citing** 7A Wright, et al., **Fed. Practice & Proc.** § 1777, at 518-19 (2d ed. 1986)). "In order to 'predominate,' common issues must constitute a significant part of the individual cases." *Jenkins v. Raymark Indus., Inc.*, 782 F.2d 468, 472 (5th Cir. 1986). "Where there is an essential factual link between all class

13

members and the defendants, for which the law provides a remedy, questions of law or fact common to the class exist." *D'Alauro v. GC Servs. Ltd. P'Ship*, 168 F.R.D. 451, 458 (E.D.N.Y. 1996) (citation omitted). Furthermore, "when one or more of the central issues in the action are common to the class and can be said to predominate, the action will be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately." 7A Wright, et al., *supra*, § 1778.

> The nature of the evidence that will suffice to resolve a question determines whether the question is common or individual. If, to make a prima facie showing on a given question, the members of a proposed class will need to present evidence that varies from member to member, then it is an individual question. If the same evidence will suffice for each member to make a prima facie showing, then it becomes a common question.

*Blades v. Monsanto Co.*, 400 F.3d 562, 566 (8th Cir. 2005) (internal citation omitted).

The defendant argues individual issues predominate in this case because of different types of PPE and different employee experiences. **See** Filing No. 128 - Brief p. 22-23. Further, the defendant contends three separate issues would require mini-lawsuits. Specifically, whether twelve minutes is sufficient to compensate the employees, whether standard PPE activities were compensable, and whether the uncompensated time was *de minimus*. **Id.** However, the court finds the employees do not present unique issues. In fact, the specific issues raised by the defendant highlights the necessity for a joint trial on these matters. The types of activities subject to compensation are uniform among the employees without regard to their individual work experiences. Accordingly, whether the employees are engaging in compensable pre- and post-shift activities will not depend on individual experience or timing. In this case, common issues are the same in all class members' cases and therefore the same issue "predominates" over their individual cases. Each case for each class member is about the defendant's common pay system for activities by production employees at the Omaha, Nebraska facility. Because this same issue is common to all class members, regardless of the differences in individual experiences, the predominance element is satisfied.

### ii. Superiority

For the second prong of the Rule 23(b)(3) inquiry, the class action must be "superior to other available methods for the fair and efficient adjudication of the controversy." **See** Fed. R. Civ. P. 23(b)(3). "Implicit in the satisfaction of the predominance test is the notion that the adjudication of common issues will help achieve judicial economy. Having to engage in separate threshold inquiries for each class member prior to reaching the common issues does not promote such economy. . . . [It] will create judicial dis economy." *Estate of Mahoney*, 204 F.R.D. at 161 (**quoting** *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996); *Smith v. Brown & Williamson Tobacco Corp.*, 174 F.R.D. 90, 94 (W.D. Mo. 1997) (emphasis in original)).

The plaintiffs contend there is no alternative forum superior to a class action under the facts of this case. A class action would give hundreds of workers an opportunity to resolve their claims in one lawsuit, as opposed to the same number of individual lawsuits over the same issue. **See** Filing No. 120 - Brief p. 19-20. The plaintiffs assert the modest monetary nature of individual claims would decrease the likelihood of individual lawsuits. *Id.* The defendant contends a class action under the circumstances is not superior because of the individualized nature of the claims requiring mini-trials. **See** Filing No. 128 - Brief p. 22-23.

The undersigned finds resolution of the claims, at least as to the liability of the defendant to the class members, through a class action would, under the circumstances, be an efficient allocation of judicial resources. As stated above, resolution of the plaintiffs' claims do not require the individualized scrutiny described by the defendant because the core issue and arguments of each putative class member is the same. A class action is a superior method of resolution of the issues compared to individual litigation or separate litigation of the state law claims. Accordingly, the undersigned magistrate judge will recommend class certification under Rule 23(b)(3). Upon consideration,

**IT IS RECOMMENDED TO CHIEF JUDGE JOSEPH F. BATAILLON that:**

The plaintiffs' plaintiffs' Motion for Class Certification (Filing No. 119) be granted to include:

> All current and former production and support workers of Defendant Greater Omaha Packing Co.'s Omaha, Nebraska meat processing facility who have been employed by Greater Omaha at any time from March 4, 2004, to the present and are or were paid on a "gang time" basis during this Class Period.

**ADMONITION**

Pursuant to NECivR 72.2 any objection to these Findings and Recommendations shall be filed with the Clerk of the Court within fourteen (14) days after being served with a copy of these Findings and Recommendations. Failure to timely object may constitute a waiver of any objection. The brief in support of any objection shall be filed at the time of filing such objection. Failure to file a brief in support of any objection may be deemed an abandonment of the objection.

DATED this 2nd day of February, 2010.

BY THE COURT:

s/Thomas D. Thalken
United States Magistrate Judge

---

*This opinion may contain hyperlinks to other documents or Web sites. The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.