**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA**

| | | |
|---|---|---|
| **JOSE MORALES, et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | **8:08CV88** |
| | ) | |
| **and** | ) | |
| | ) | |
| **GABRIEL SANCHEZ CLAUDIO, et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | **8:08CV161** |
| | ) | |
| **vs.** | ) | |
| | ) | |
| **GREATER OMAHA PACKING** | ) | **FINDINGS AND** |
| **COMPANY, INC.,** | ) | **RECOMMENDATION** |
| | ) | |
| **Defendant.** | ) | |

This matter is before the court on the defendant's Motion to Decertify Collective Action & Rule 23 Class Action (Filing No. 187).[1]  The defendant filed a brief (Filing No. 188) and an index of evidence (Filing No. 189) in support of the motion.  The plaintiffs filed a brief (Filing No. 197) and an index of evidence (Filing No. 198) in opposition to the defendant's motion.  The defendant filed a brief (Filing No. 201) and an index of evidence (Filing No. 202) in reply.

**INTRODUCTION**

The plaintiffs in the above-captioned consolidated cases are the defendant's current and former employees who worked at some time during the period March 4, 2005, to the present.  The cases were filed as class actions alleging violations of the Fair Labor Standards Act of 1938 (FLSA), 29 U.S.C. § 201, *et seq.*, and state law regarding pay for pre- and post-production line activities, including "donning and doffing," and other activities in connection with job functions.  The plaintiffs seek relief for alleged violations of state and federal wage-and-hour laws, including for alleged failures to pay minimum wage and

---

[1]  All citations to the record will only be to the filings in case number 8:08CV88, unless specifically noted otherwise.

overtime compensation for job-related activities.  The plaintiffs filed the initial action on March 3, 2008.  **See** Filing No. 1.  On June 5, 2008, the two cases were consolidated for all purposes.  **See** Filing No. 23.  Subsequent to consolidation with the later-filed action, the plaintiffs filed an amended complaint on July 7, 2008.  **See** Filing No. 28.

On December 10, 2008, the plaintiffs filed a motion for conditional class certification pursuant to the FLSA, 29 U.S.C. § 216(b).  **See** Filing No. 63.  On June 9, 2009, the court conditionally certified the plaintiffs' action as a collective action pursuant to the FLSA.  **See** Filing No. 92.  On June 29, 2009, the court approved the parties' notice form to be sent to potential FLSA members.  **See** Filing No. 106.  On September 1, 2009, the plaintiffs filed a motion for class certification of their state law claims pursuant to Fed. R. Civ. P. 23.  **See** Filing No. 119.  On March 17, 2010, the court granted the motion certifying a Rule 23 class action for the plaintiffs' Nebraska state law claims.  **See** Filing No. 143.

On October 21, 2010, the defendant filed the instant motion to decertify both the FLSA collective action and the Rule 23 class action.  **See** Filing No. 187.  The defendant seeks an order decertifying the collective and class actions, permitting the named plaintiffs to proceed to trial on their individual claims, and dismissing the claims of the opt-in plaintiffs, without prejudice.  *Id.*  Briefing on the instant motion is complete.

During the briefing of the motion for decertification, trial was scheduled for February 14, 2010, however, the court subsequently continued trial until October 31, 2011.  **See** Filing Nos. 204 and 207 - Text Order.  Discovery in this matter is complete.  **See** Filing No. 140.  Two motions for partial summary judgment have been denied.  **See** Filing Nos. 176, 179, and 212.  However, two individual plaintiffs have been dismissed due to those two plaintiffs' decisions to discontinue participation in the lawsuit.  **See** Filing No. 182 and 212. The plaintiffs mailed class notice to potential class members on November 19, 2010, with a January 28, 2011, deadline to opt-in to the FLSA collective action.  **See, e.g.**, Filing No. 201 - Reply p. 8.  However, there is no evidence in the record suggesting the number of opt-in members has changed since briefing on the instant motion was completed.

## FACTUAL BACKGROUND

The following facts are alleged in the plaintiffs' complaint.  The defendant operates a meat processing facility at 3001 L Street in Omaha, Nebraska.  **See** Filing No. 28 - Amended Complaint ¶ 21.  The defendant relies on a compensation system known as "gang time" or "line time," which pays production employees only during the time period they are present on the actual production assembly line.  *Id.* ¶ 34.  Based on the gang time pay system, the defendant does not pay employees for all required pre-production line and post-production line activities and periods of required presence.  *Id.*  Specifically, the plaintiffs allege they are not compensated for the following activities, which are integral to their overall employment responsibilities:

> donning and doffing clothing and protective equipment, cleaning and sanitizing that equipment, sharpening knives, walking to their lockers and/or production line after already performing compensable activities, and at the end of the work day, walking to the wash stations and then to their lockers and/or supply rooms before the end of compensable time, working on knife maintenance equipment known as "steels" or "mousetraps", and waiting in line to receive required knives, supplies, tools and equipment needed for production line activities.

*Id.*

Additionally, the defendant's employees are required to wear uniforms and special personal protective equipment (PPE) for protection and sanitary reasons.  *Id.* ¶ 35.  The required uniforms include shirts, pants, and boots.  *Id.*  The PPE may vary depending on job duties, but includes plastic aprons, belly guards, wrist guards, mesh sleeves, sheaths, gloves, mesh gloves, mesh aprons, hardhats, scabbards, hairnets, earplugs, coveralls, eye protection, and other similar items.  *Id.*  The defendant does not compensate the employees for the time spent removing, replacing or cleaning their PPE at the beginning or end of paid and/or unpaid meal or break periods.  *Id.* ¶ 40.

The plaintiffs provide additional evidence suggesting all slaughter and fabrication employees wear at least some items of PPE.  **See** Filing No. 197 - Response p. 4-6.  The gang time employees wear some PPE and engage in cleaning activities as part of their employment, even though not all of the activity is required.  *Id.*  However, some activities

are required and the failure to engage in the activities may result in disciplinary action. *Id.* at 6.

The defendant admits certain of the employees are required to wear varying types of PPE to perform the functions of their jobs. **See** Filing No. 67 - Answer ¶ 35. However, the defendant explains that the type and extent of equipment varies among employees based on their job assignments. **See** *id.* The defendant specifically describes different departments and assignments within departments, listing the types of uniforms or PPE used by the employees in each category. **See** Filing No. 188 - Brief p. 4-8. The defendant describes the manner in which several different employees use PPE, how they choose non-required PPE, and how and when they don or doff PPE (e.g., in the locker room, while walking to the production area, or in the production area). *Id.* at 5-8. In any event, the defendant states,

> All employees are required, when entering production areas, to wear a hard hat, ear plugs, hairnet, and, if applicable, beard net. In addition, Fabrication employees are required to wear a company-issued cotton frock over their street clothes. Beyond that, "[w]orkers within Slaughter and within Fabrication have different jobs and different PPE requirements. Some items are required for individual jobs . . . and other items are worn solely according to an employee's individual choice."

Filing No. 188 - Brief p. 4 (internal citations omitted).

The defendant states the plaintiffs are compensated according to gang time, which corresponds to production time. *Id.* at 8. Specifically, each department is paid from the time the first animal or carcass enters the department until the last animal or carcass enters the department. *Id.* As a result, the gang time varies by department and by day. *Id.* The gang time fabrication employees receive an additional two paid minutes during their otherwise unpaid 32-minute meal period. *Id.* at 7. The defendant asserts that the gang time employees are paid "12 minutes per day in addition to gang time as compensation for time spent on donning and doffing and related activities" as part of a long-standing company policy. *Id.* (**citing** Filing No. 189 - Ex. A Executive Vice President Angelo Fili Decl. ¶¶ 18-19). The defendant describes the manner in which gang time is recorded on time sheets, by individual supervisors, as follows:

> Each time sheet has the employee's name, wage rate, the department, the days of the week, and a blank for each day; and the supervisor would fill in the gang time, a checkmark to see that the employee was here, and any variance, which would be if the employee either came in early to set up, stayed late to tear down, or left [early] for the day.

**See** Filing No. 198 - Ex. 1(B) Fili Depo. p. 32-33 (alteration added).  A line supervisor writes the gang time for a particular shift on a dry-erase board on the wall of the supervisors' shared office.  *Id.* Ex. 1(D) Eliseo Garcia, Sr. Depo. p. 9-10.  The gang time reflects the start and stop time for production and does not include any additional time for pre- or post-production activity.  *Id.* Ex. 1(A) Esley Peter Adams Depo. p. 39, 98.  Other supervisors use the same time to record the gang time for the same shift on employee time sheets, which are given to the payroll department for use in determining pay for each employee.  *Id.* Ex. 1(D) Eliseo Garcia, Sr. Depo. p. 9-10; **see** *id.* Ex. 1(A) Esley Peter Adams Depo. p. 38-39, 50-51.  The payroll department employees receive the time sheets, "then [they] calculate the hours and input them into the computer."  **See** Filing No. 178 - Ex. 4 Kathy Cedillo Depo. p. 12.  "[T]he gang time is indicated on the time sheet daily; and that is what we pay the employee."  *Id.* at 9.  There is no separate designation on the paycheck indicating pay for an additional twelve minutes for pre- or post-production activity.  *Id.* at 11.  Any extra paid time for such activity would be included in the gross number of hours worked.  *Id.*

The plaintiffs dispute whether the defendant records any time spent on non-production activity, including donning, doffing, and cleaning activities done in connection with paid and unpaid break periods.  **See** Filing No. 197 - Response p. 7, 9.  Additionally, the plaintiffs dispute whether the defendant actually pays the gang time employees the extra twelve minutes.  *Id.* at 8 (citing one supervisor and three employee depositions:  two employees state they did not know they were paid extra minutes and one employee stated he did know, but he does not believe he was paid the extra minutes, and the supervisor stated he knew about the policy, but never saw any documented proof the defendant followed the policy).

The plaintiffs believe there are at least 2000 present and former production and support employees in the defined class based on the time period between March 4, 2005,

and the present.  **See** Filing No. 28 - Amended Complaint ¶ 23; **see** Filing No. 64 - Brief p. 1 & n.1.  Seventy-one current and former employees filed consent forms to join the opt-in class.  **See, e.g.**, Filing No. 188 - Brief p. 3.

## ANALYSIS

The defendant seeks to have the court decertify the plaintiffs' conditionally certified FLSA claim, pursuant to 29 U.S.C. § 216(b).  Pursuant to the FLSA a collective action may be maintained "by any . . . employee . . . for and in behalf of himself . . . and other employees similarly situated" to recover damages for the failure to pay minimum or overtime wages.  29 U.S.C. § 216(b); **see** 29 U.S.C. § 207.  An FLSA "collective action" is different from a Rule 23 class action.  "In a class action, a potential plaintiff's claim is automatically included in the case unless he expressly 'opts out' of the class.  By contrast, a potential plaintiff's claim will be included in a collective action *only* if he expressly opts *in* to the action." *Parker v. Rowland Express, Inc.*, 492 F. Supp. 2d 1159, 1163 (D. Minn. 2007).  The district court, in its discretion, may authorize the named plaintiffs to transmit notice of the lawsuit to other potential claimants upon a showing the named plaintiffs are similarly situated to the others whom they seek to represent.  *Id.*  "[C]ourts generally follow a two-stage approach when deciding whether the named plaintiffs in an FLSA action are 'similarly situated' to other potential plaintiffs."  *Id.*

Succinctly put,

> At the first stage, a class is conditionally certified on a relatively minimal showing, and then prospective plaintiffs can opt in to the action by filing consent forms.  At the second stage, which almost always follows substantial discovery, plaintiffs must make a stronger showing to continue to proceed on a collective basis.  If plaintiffs cannot make this stronger showing at the second stage, the conditionally certified class is decertified.  Typically the second stage is triggered when the defendant moves to decertify the conditionally certified class.

*Parler v. KFC Corp.*, 529 F. Supp. 2d 1009, 1011 (D. Minn. 2008) (internal citation omitted).

Furthermore, the first stage or "notice stage" may be based only on the pleadings and any affidavits in the record. *Parker*, 492 F. Supp. 2d at 1164. At the early stage, "[t]he court does not make any credibility determinations or findings of fact with respect to contrary evidence presented by the parties." *Burch v. Qwest Commc'ns Int'l, Inc.*, 500 F. Supp. 2d 1181, 1186 (D. Minn. 2007) (citation omitted). The plaintiffs have the burden of presenting evidence "establishing a colorable basis that the putative class members are the victims of a single decision, policy, or plan." *Id.* "A colorable basis means that plaintiff must come forward with something more than the mere averments in its complaint in support of its claim." *Severtson v. Phillips Beverage Co.*, 141 F.R.D. 276, 278-79 (D. Minn. 1992) (containing language from Mag. J. order in District Court opinion affirming). Even at the early stage, there must be meaningful identifiable facts or legal nexus binding the claims "so that hearing the cases together furthers the purposes of section § 216, is fair to both parties, and does not result in an unmanageable trial." *Falcon v. Starbucks Corp.*, 580 F. Supp. 2d 528, 535 (S.D. Tex. 2008); **see also** *England v. New Century Fin. Corp.*, 370 F. Supp. 2d 504, 507-08 (M.D. La. 2005). "Courts who have faced the question of whether movants established substantial allegations have considered factors such as whether potential plaintiffs were identified; whether affidavits of potential plaintiffs were submitted; and whether evidence of a widespread discriminatory plan was submitted." *H & R Block, Ltd. v. Housden*, 186 F.R.D. 399, 400 (E.D. Tex. 1999) (internal citations omitted). Evidence most production employees are paid on a gang time basis provides ample evidence of a "single decision, policy or plan." *Bouaphakeo v. Tyson Foods, Inc.*, 564 F. Supp. 2d 870, 896 (N.D. Iowa 2008); **see also** *Garcia v. Tyson Foods, Inc.*, 255 F.R.D. 678 (D. Kan. 2009) (holding defendant's admissions with regard to gang time system, and failure to record actual time spent on activities, provided support for plaintiffs' assertions that employees were not compensated for time spent performing work activities). Additional factors suggesting similarity include whether a significant number of the plaintiffs are from the same geographical location or facility. **See** *Bouaphakeo*, 564 F. Supp. 2d at 894.

By contrast, a second stage or final determination is usually made "after discovery is largely complete and the matter is ready for trial" when the court is able to make "a

factual determination on the similarly situated question." *Parker*, 492 F. Supp. 2d at 1164 (citation omitted).

> The "similarly situated" standard at the second stage is less "lenient" than at the first, as is the plaintiffs' burden in meeting the standard.  Exactly how much less lenient [the court] need not specify, though logically the more material distinctions revealed by the evidence, the more likely the district court is to decertify the collective action. . . . [A]lthough the FLSA does not require potential class members to hold identical positions, the similarities necessary to maintain a collective action under § 216(b) must extend beyond the mere facts of job duties and pay provisions.

*Anderson v. Cagle's, Inc.*, 488 F.3d 945, 953 (11th Cir. 2007) (alteration added) (internal citations and quotations omitted).  "During this second stage analysis, a court reviews several factors, including (1) disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to defendant which appear to be individual to each plaintiff; [and] (3) fairness and procedural considerations."  *Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1102-03 (10th Cir. 2001) (internal quotations and citation omitted); **see also** *Bouaphakeo*, 564 F. Supp. 2d at 897-900.

In the instant case, there is no dispute the certification process is at the "second stage" for final determination.  Discovery is complete.  The case is scheduled for trial.  **See** Filing No. 207 - Text Order.

The court conditionally certified the plaintiffs' collective action consisting of:

> All present and former production and support employees who have been employed by Greater Omaha Packing Co., Inc.'s Omaha, Nebraska, processing facility during the time period March 4, 2005, to the present, who use personal protective equipment, and are compensated based on a gang time system.

**See** Filing No. 92.  The court certified a similar class on the state law claims.  **See** Filing No. 143 - Order; Filing No. 139 - Findings and Recommendations.

The defendant argues the court should decertify the conditionally certified class "because: (1) there are numerous disparate factual and employment issues relating to Plaintiffs' FLSA claims; (2) [the defendant] has defenses that require individualized assessment of each class member's FLSA claims; and (3) fairness and procedural

concerns render this case unmanageable as a collective action." **See** Filing No. 188 - Brief p. 1.  The defendant argues the Rule 23 class action should also be decertified because, based on the same rationale, the plaintiffs "do not satisfy the commonality, typicality, or adequacy of representation requirements of Rule 23(a)." *Id.*  Specifically, the defendant argues each class member may wear different PPE and take different amounts of time to don, doff, or engage in other allegedly unpaid activity.  *Id.* at 11-12.  Furthermore, the defendant contends it has a long-standing practice of paying the gang-time employees for extra minutes.  *Id.* at 16-17.  Accordingly, the defendant asserts the variations in the class members' activities, combined with the extra time each member is paid, bears on whether the defendant may be liable to any individual member.  *Id.* at 15-16. Thus, the individual differences are relevant to a liability determination, and not only relevant to the amount of damages.  *Id.* at 15-19; Filing No. 201 - Reply p. 4-6.  In this regard, the liability issues would require mini-trials for each class member.  *Id.*

The plaintiffs contend the named plaintiffs are similarly situated to all potential class members because they are all subject to the defendant's common policy of requiring employees to perform work without compensation based on the gang time system, rather than on the time spent by the employees engaged in compensable work.  **See** Filing No. 197 - Response p. 1-2, 10-12.  The plaintiffs argue that although the defendant disputes whether the practice is a violation of the FLSA, the system is uniform among gang time employees at the facility.  *Id.*  The plaintiffs dispute whether the defendant actually pays the employees for any time other than gang time.  *Id.* at 7-8.  In any event, the plaintiff argues all class members are treated uniformly in the payment for non-gang time activity. *Id.* at 1-2.

The court finds the plaintiffs have met their burden of presenting evidence to maintain the classes as previously certified or conditionally certified.  The evidence shows the class members are subject to a single decision, policy, or plan.  The plaintiffs need not show the class members are identically situated.  In this case, the evidence shows the plaintiffs are employed in one of two departments, in the same location, advance similar claims, seek substantially the same form of relief, and have similar circumstances of employment.  Specifically, the plaintiffs were paid with a gang time system based on an

hourly rate in one of two production departments.  Additionally, they all were required to don and doff certain items of PPE in the course of their employment, though the exact items of PPE required and worn would vary, at least to some extent, based on department, position, and personal preference.  The differences among employees (i.e., types of equipment and amount of time spent) do not diminish these predominant relevant similarities.  Likewise, the defenses noted by the defendant would apply (or fail to apply) to many, if not all of the plaintiffs.

Moreover, the pay policy was uniformly applied with a uniform number of extra minutes paid (or promised) to the gang time production employees.  **See *Russell v. Illinois Bell Tele. Co., Inc.*, 721 F. Supp. 2d 804, 815-16 (N.D. Ill. 2010)** (finding plaintiffs were similarly situated despite variation in off-the-clock time due to common policies); **cf. *Lugo v. Farmer's Pride Inc.*, 737 F. Supp. 2d 291, 295-97, 303-04 (E.D. Pa. 2010)** (finding plaintiffs were not similarly situated because pay system changed over time and predetermined pay for donning and doffing activities differed by department, shift, position, and supervisor).  In this case, the plaintiffs do not suffer from any substantial and material difference.  **See *Anderson*, 488 F.3d at 954 n.8** (noting many of the opt-in plaintiffs were not unionized and a key defense centered on the existence of a collective bargaining agreement); ***Gatewood v. Koch Foods***, No. 3:07CV82, 2009 U.S. Dist. LEXIS 113896, at *53-54 (S.D. Miss. Oct. 20, 2009) (finding plaintiffs were not similarly situated because they admitted they were not subject to a single pay practice and varying pay decisions implemented based on specific departments, positions, and supervisors); ***Brechler v. Qwest Commc'ns Int'l, Inc.*, No. CV-06-940, 2009 WL 692329 (D. Ariz. Mar. 17, 2009)** (finding plaintiffs were not similarly situated because subtle coercion requiring employees to work uncompensated overtime did not affect plaintiffs equally due to individual managers' practices).  The defendant contends the extra minutes paid to gang time employees compounds the reason for the individualized inquiry necessary for each class member because the court would have to determine whether each individual class member had been undercompensated at all.  **See** Filing No. 201 - Reply p. 4-5.  However, the defendant also notes, with regard to determining the amount of time spent on allegedly uncompensated activities, that the material issue is "the amount of time that each individual

10

*reasonably devotes*" to such activities, rather than each member's actual time.  *Id.* at 6. While the defendant's arguments, if supported, do not require class decertification, the court finds the evidence before the court does not establish the defendant actually pays employees extra minutes beyond the gang time in production.  The evidence shows the defendant has a declared policy in place to pay extra minutes, however there is no support for how the policy translates into practice.  It is unclear who is responsible for appending the extra time to the employees' gang time, as the extra time is not added into the gang time by the line supervisors, nor is it a separate line item in the payroll documents (either going to or coming from the payroll department on employee pay records).

In sum, the court finds the differences between the class members in terms of precise PPE used or time consumed in relevant activities does not require individualized assessments for liability.  In determining the defendant's liability, the court will determine the impact of a single pay policy or plan on the class members as a whole.  Whether certain activities are compensable will not be determined at this stage of the litigation. Clearly, "[t]he question for trial . . . is what is a compensable work activity and how that work relates to the wages paid to plaintiffs."  **See** Filing No. 212 - Memorandum and Order p. 4.

Furthermore, the current facts and procedural posture of the case indicate hearing the class members' cases together is fair to the parties and will not result in an unmanageable trial.  Under the circumstances presented, the plaintiffs are adequate representatives of the defendant's past and current employees who engage in allegedly compensable, but uncompensated work activity.  The plaintiffs are similarly situated to members of the proposed class.  Similarly, there is no legal or factual basis to change the court's determination the Rule 23 class certification is appropriate. Thus, class certification is warranted with regard to those employees who use PPE and are paid under the gang time system.  For these reasons, the court recommends denying the defendant's motion to decertify the classes in this case.  Upon consideration,

**IT IS RECOMMENDED TO CHIEF JUDGE JOSEPH F. BATAILLON that:**

The defendant's Motion to Decertify Collective Action & Rule 23 Class Action (Filing No. 187) be denied.

## ADMONITION

Pursuant to NECivR 72.2 any objection to this Findings and Recommendation shall be filed with the Clerk of the Court within fourteen (14) days after being served with a copy of this Findings and Recommendation. Failure to timely object may constitute a waiver of any objection. The brief in support of any objection shall be filed at the time of filing such objection. Failure to file a brief in support of any objection may be deemed an abandonment of the objection.

DATED this 5th day of April, 2011.

BY THE COURT:

s/ Thomas D. Thalken
United States Magistrate Judge

---

\*This opinion may contain hyperlinks to other documents or Web sites. The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.